## Cruse's Executor et al. v. Haggard.

(Decided December 11, 1931.)

JOUETT & METCALF for appellants.

BENTON & DAVIS and RODNEY HAGGARD for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

In 1872, James Haggard owned a large body of land in Clark county, and conveyed a part of the tract to Evan and John Henry. At that time the waters of Dry Fork creek ran through that part of the land conveyed to the Henrys. After their purchase, they placed a water gap in the creek, which threw the water on the

land still owned by Haggard. When this was done, Haggard, on September 31, 1874, brought suit against the Henrys to have the water gap removed and the water returned to its old course. After the suit was filed, by agreement of parties, the case was submitted to arbitrators, who made the following award on April 10, 1875:

"That all controversy between them shall cease, and that the said Evin and John Henry shall pay to James Haggard the sum of $50.00 for what damages he has already sustained by reason of said Henrys obstructing the channel of Dry Fork Creek causing the waters of said stream to flow on the lands of said Haggard. Also that the said Evin and John Henry shall remove the obstruction in said Dry Fork Creek and build a dam across the channel of the creek that now runs by the lands of the said Haggard to his damage. This dam shall be built so as to throw all of the water of said stream into its old channel at an ordinary tide. Upon said Henrys failing to perform the above requirements they shall pay to said Haggard $700.00 in damages; also the said Henrys by their agreement pay all costs of this arbitration."

The award was filed in the court proceeding, and on November 13, 1876, an order was entered referring the case to the master commissioner to ascertain whether or not the Henrys had complied with the award. On April 2, 1877, the parties signed the following agreement:

"Know all men by these presents that I, James Haggard, plaintiff, and Evan Henry and John Henry, defendants in a suit now pending in Clark circuit court, we each and severally bind ourselves to withdraw a suit now pending before a commissioner by order of the Clark circuit court on the following conditions: First—Both parties agree to build and keep a good and sufficient dam across the waters of Dry Fork Creek, each party doing an equal amount of work so that the waters will run in that part of the creek that runs next to said Henrys' house; that we each and severally agree to keep the dam in repair. Second—We do each and severally agree to pay the following part of the cost; James

> Haggard agrees to pay his witnesses and one-half of the remaining cost and also his part of the cost before the arbitration and the said Henrys their witnesses' fee and the other half of the remaining cost, on the fulfilling of the above conditions the suit is to be withdrawn and all other arbitrations heretofore had are to be set aside. Witness our hands and seals this day and date above written."

The agreement was filed in court. On October 22, 1877, a written agreement signed by the parties was filed, which read as follows:

> "It is hereby agreed that this action should be dismissed as per the terms of the award and agreement filed herein."

On this agreement, the court entered an order that it appearing that the defendants had complied with the award of the arbitrators,

> "It is ordered that, this cause be filed away, each party paying the cost incurred by them since April 26, 1875."

In 1896, Henry having become insolvent, his land was sold under a judicial decree, and was bought by James Cruse and wife. They moved upon the land. The dam which had been built to turn the water consisted of cedar logs, brush, and rock. Though the dam had been renewed from time to time, it was in a very bad shape when Cruse bought. There was in fact little left of it except some logs and some rock, and the water was running down pretty much as before the dam was built. Haggard lived to be a very old man and had allowed things to go down. Thus things ran along until 1911 when the road supervisor, Shelt Haggard, to protect the county road, built in place of the old dam a cement dam at practically the same place. But this dam did not stand very well. Part of it soon fell in, and the water ran down as before on Haggard in ordinary stages. But a part of the dam was there in 1928, when Jesse H. Haggard bought the Haggard farm and moved upon it. He then began to repair and extend the dam which the road supervisor had built. Cruse and wife then brought this action

to enjoin the construction of the dam. The situation is roughly illustrated in the following plat:

The dam in question is represented by red lines 1 and 2; the line between Henry and Haggard by the lines 1, 3, and 4; the east branch of the creek by lines 1 and 5; and the west branch by lines 1, 3, and 4.

The circuit court adjudged Haggard entitled to construct and maintain a dam across the west branch of Dry Fork Creek of sufficient height and length to confine the ordinary and usual flow of the water to the east branch, and Cruse was required to clean out and keep cleaned out all accumulation in the east branch that would prevent the passage of water at its ordinary flow through the east branch. He also adjudged that Haggard might build and maintain a wall at the place where the Shelt Haggard wall was built, "the top of which shall not be more than 2 feet above the bed of the west branch of Dry Fork," and if Cruse permits the deposit of silt or gravel to accumulate along the north side of the

wall, thereby carrying the ordinary and usual flow of water over the top of the wall, then the defendant may increase the height of the wall to maintain the excess height at 2 feet. Cruse appeals.

It is earnestly insisted for Cruse that he bought the property in 1896 without notice of any right of Haggard to maintain a dam at the forks of the creek, and that when he bought, the water was running down the east branch, and, though there were still some logs and rocks, there were not enough of these to turn the course of the water. But when Cruse bought from Henry, he simply acquired what Henry owned. He acquired no greater rights than Henry had. In Freeman on Judgments, vol. 1, sec. 439, the rule is thus stated:

"A vendee or grantee is in privity with his vendor or grantor, and bound by judgments against him and entitled to the benefits of judgments in his favor rendered previously to the sale of the property. Where water rights have been adjudicated a successor in interest of one of the parties is bound by the judgment and by an injunction forming part of it."

The same rule was announced by this court in Shanahan v. McIntire, 169 Ky. 160, 183 S. W. 529, 532, in these words:

"As appellants claim title to the land in controversy through Mike Murphy, they can show no better right thereto than was shown by him in the former action; and, as the judgment in that action would bar any recovery of the land by him if he were living, and suing for it instead of appellants, it will so effectually bar such recovery by them."

To the same effect, see 34 C. J., p. 1014, sec. 1438, and cases cited. The award of the arbitrators and the agreement of the parties made thereon were filed in court, and by the judgment of the court they became a part of the judgment. Henry was bound by this judgment just as he was by any other, and it followed the land in the hands of Cruse. Section 2358a-1, Kentucky Statutes, providing for notice of a lis pendens is an act of 1896 and has no application to actions previously filed. There is proof showing that Shelt Haggard acted under the agreement above referred to, and that his dam for

some years turned the water. Under the evidence, undoubtedly the east branch was the old bed of the creek.

It is earnestly insisted for Cruse that the judgment goes too far, but the sum of the arbitration was that the east branch of the creek was the old bed, and that the creek was to be returned to its old bed. The dam Shelt Haggard built was about 2 feet high, and so was the original dam built by the parties under the award of the arbitrators. The judgment of the court, in substance, only permits Haggard to build and maintain a dam sufficient to turn the water back into its old bed. Substantially, it carries into effect only the award of the arbitrators, and the court finds no substantial error in it.

The dam appellee built was some 20 feet longer than the Shelt Haggard dam, but it was no longer than was reasonably necessary to carry into effect the award of the arbitrators.

Judgment affirmed.